IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: § | § | CHAPTER 11 CASE |
| INTEGRA HOSPITAL PLANO, § L.L.C., *et al.*, § | § § | CASE NO. 08-42998 |
| Debtors. § § | § § | Jointly Administered |
| INTEGRA HOSPITAL PLANO, L.L.C., § INTEGRA HOSPITAL BATON ROUGE, § L.L.C., INTEGRA HOSPITAL § MANAGEMENT, L.L.C., INTEGRA § HEALTHCARE HOLDINGS, LTD., § AND ROCKWALL REHAB HOSPITAL, § LTD. § Plaintiffs, § § v. § § SIMBA VENTURES HOLDINGS, LTD., § § Defendant. § | | Adversary No. _____ |

**COMPLAINT ON AN EMERGENCY BASIS FOR VIOLATION OF THE AUTOMATIC STAY AND TO COMPEL TURNOVER OF DEBTORS' INFORMATION HELD ON SERVERS IN THE POSSESSION OF SIMBA VENTURES HOLDINGS, LTD'S SERVERS ON AN EMERGENCY BASIS AND FOR TORTIOUS INTERFERENCE WITH CONTRACT**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Integra Hospital Plano, L.L.C. ("Integra Plano"), Integra Hospital Baton Rouge, L.L.C. ("Integra Baton Rouge"), Integra Hospital Management, L.L.C. ("Integra Management") and Integra Healthcare Holdings, Ltd. ("Integra Holdings," together with Integra Plano, Integra Baton Rouge and Integra Management, the "Debtors" or "Companies"), the Debtors in the above captioned cases (the "Cases") and Rockwall Rehab Hospitals, Ltd, hereby file this *Complaint on*

COMPLAINT ON AN EMERGENCY BASIS FOR VIOLATION OF THE AUTOMATIC STAY AND TO COMPEL TURNOVER OF DEBTORS' INFORMATION HELD ON SERVERS IN THE POSSESSION OF SIMBA VENTURES HOLDINGS, LTD ON AN EMERGENCY BASIS AND FOR TORTIOUS INTERFERENCE WITH CONTRACT    Page 1
2493863.1

*an Emergency Basis for Violation of the Automatic Stay and to Compel Turnover of Debtors' Information Held on Servers in the Possession of Simba Ventures Holdings, Ltd on an Emergency Basis and for Tortious Interference with Contract* (the "Complaint") and would respectfully show the Court as follows:

## I. PARTIES

1. Integra Hospital Plano, L.L.C., Integra Hospital Baton Rouge, L.L.C., Integra Hospital Management, L.L.C. and Integra Healthcare Holdings, Ltd. are the Debtors in Possession and Plaintiffs.

2. Rockwall Rehab Hospitals, Ltd. is the proposed purchaser and Plaintiff.

3. Simba Ventures Holdings, Ltd. ("Simba" and/or "Defendant") is a party-in-interest and the Defendant and may be served through David LeBlanc, the member of Simba Ventures GP, L.L.C., the general partner of Simba, at 5736 Northbrook Drive, Plano, TX 75093.

## II. JURISDICTION, VENUE AND BACKGROUND

4. This Court has jurisdiction to consider the Complaint pursuant to 28 U.S.C. §§ 147 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief requested herein are Sections 105, 362, 363, and 542, of the Bankruptcy Code; Rules 2002, 6004, 7001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); Local Rules 2002, 6004, and 9014 of the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the Eastern District of Teas (the "Local Rules").

COMPLAINT ON AN EMERGENCY BASIS FOR VIOLATION OF THE AUTOMATIC STAY AND TO COMPEL TURNOVER OF DEBTORS' INFORMATION HELD ON SERVERS IN THE POSSESSION OF SIMBA VENTURES HOLDINGS, LTD ON AN EMERGENCY BASIS AND FOR TORTIOUS INTERFERENCE WITH CONTRACT     Page 2
2493863.1

6. On November 5, 2008 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code").

7. The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. Further, no trustee or examiner has been requested or appointed.

8. A further description of the background of the Debtors and the events leading up to the filing of the voluntary petitions by the Debtors, is provided in the Affidavit of Mark Pfeil in Support of First Day Pleadings located at docket number 3, which is incorporated by reference herein.

9. By hearings held on January 20, 2009 and February 2, 2009, the Court approved the sale of substantially all assets to Rockwall. On February 5, 2009, the Court entered the *Final Order Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (a) Authorizing the Sale of Substantially all of Debtors' Assets; (b) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (c) Granting Related Relief* ("Final Order") approving the sale.

10. Under the terms of the Asset Purchase Agreement ("APA"), Rockwall will acquire substantially all of the assets of Integra. Included in these assets are:

> 1.01(b) all documents, records, correspondence, work papers and other documents relating to the Seller Receivables, the Seller Cost Reports (as defined in Section 8.05 hereof) ….

11. Under the APA, Rockwall is required to prepare certain cost reports relating to Medicare, Medicaid, Blue Cross and other third payors (the "Cost Reports"). Failure to do so could adversely and materially impact Rockwall's ability to collect on the receivables.

12. The transaction was scheduled to close at 11:00 am on Friday, February 13, 2009. Two hours prior to closing, Rockwall and Integra learned that Simba Ventures Holdings, Ltd, ("Simba") (an entity which claims to be the owner or the lessor of the servers and believed to be owned and controlled by David LeBlanc) planned to remove three servers (the "Servers") the day prior to the closing. The Servers contain information vital to Rockwall's operation of the business. Mark Pfeil, the chief financial officer for the Debtors, as well as David LeBlanc, have admitted that the Servers hold data that Rockwall needs to prepare the Cost Reports, and may contain information relating to the accounts receivable which Rockwall is purchasing, and possibly patient records. Integra also needs this information in order to prepare its monthly operating reports. Other data vital to Rockwall's operation of the business may also be on the Servers as well.

13. During the course of the day on Friday, the attorneys for the Debtors and Rockwall as well as Mark Pfeil participated in lengthy conference calls to try to resolve the situation in a manner which would allow Rockwall access to the Debtors' data but also preserve any privacy interest that Simba or the LeBlanc family may have in the other data. The parties did work out a solution to the problem. However, instead of cooperating with the parties to implement a solution, various LeBlanc family members appeared at the Debtors' Plano facility and began to take the Servers out of the building. The Debtors' Chief Restructuring Officer then contacted the Plano police, who attempted to prevent the LeBlanc family members from further breaching the peace. Finally, late Friday evening after the close of business, David LeBlanc and Mark Kennedy, the President of Rockwall Rehab GP, L.L.C., the general partner of the proposed Purchaser reached an agreement in which David LeBlanc would set up the Servers in his home

and Rockwall would be allowed to download the relevant information on Monday, February 16, 2009 so as to permit the transaction to fund early Tuesday morning on February 17, 2009.

14. On Monday, February 16, 2009, David LeBlanc refused to respond to numerous calls and emails to try to schedule a specific time for the downloading process to occur. Instead, the parties received an email after the close of business on Monday from Chris LeBlanc, David LeBlanc's son indicating that he would call Tuesday morning after he and his father David LeBlanc had finished with a morning meeting. In light of this most recent conduct, it is uncertain when or whether the David LeBlanc will permit the transfer of the relevant information to occur.

15. With respect to the Closing, both Rockwall and the Debtors have signed the vast majority of the documents and are simply waiting for this information to be turned over and for the Bank of Texas to sign off on the Closing Statement. However, until the issue with the Servers is resolved, the parties are at a standstill. Rockwall is unwilling to proceed with funding until there is certainty that the information necessary for Rockwall's business can be provided. Rockwall is concerned that it will close only to find it does not have the necessary data for its operations going forward. Rockwall's unwillingness to fund absent certainty concerning the Servers creates an exigent situation for Integra, as the Debtors are about to run out of cash for its operations. Each day that the closing is postponed means thousands of dollars increased closing costs.

15 Integra and the Rockwall are seeking a court order to require Simba and David LeBlanc to immediately return the Servers to the Plano facility so that they can be turned on and either Rockwall or the Debtors can download the information it needs to operate the hospitals. The requested relief would not present an undue burden on Simba or David LeBlanc because the

movants are only seeking the use of the Servers for a brief time period so that the information can be downloaded.

16. The requested relief would not present an undue burden on Simba because the movants are only seeking a 24 hour time period to download the information.

### III. COUNT 1 – MOTION TO COMPEL TURNOVER

17. Plaintiffs reincorporate the allegations contained in paragraphs 1 through 16.

18. Defendant is in possession of property of the Estate, consisting of data held on Servers in the possession Simba. Pursuant to 11 U.S.C. § 542, Defendant should be required to turn over the property to the Debtor. Section 542 provides that:

> An entity, other than a custodian, in possession, custody, or control, during the case of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

19. The Defendant's conduct has caused a delay in the closing on the sale, which in turn has caused the estate to accrue approximately $180,000 in expenses related to operating the hospital an additional four days. These are funds that the hospitals do not have and thus will need to come out of the proceeds of the sale. Proceeds from the sale impact the amount that is turned over to the Bank of Texas. Bank of Texas has not agreed that it will allow the Debtors to decrease the amount owed for these additional costs. Thus, everyday that the Defendant holds this data and does not turn it over further delays the closing and causes the estate to continue to incur costs and expenses.

### IV. COUNT II VIOLATION OF STAY

20. The Debtors reincorporate the allegations contained in paragraphs 1 through 19.

21. Defendant's conduct in the case is an attempt to exercise control over property of the Estates. Pursuant to 11 U.S.C. § 362(a)(3), the filing of a bankruptcy petition acts as a stay against any act to exercise control over property of the Estates. Defendant removed the Servers knowing that the Debtors' information was on the Servers. Defendant agreed to grant access to Rockwall and the Debtors to remove the information. Defendant understood the urgency of removing the information so that the sale could go forward. However, Defendant then failed to respond to telephone calls throughout day, and when it did respond, would not commit to turning over the information at a specific time. Thus, even after demand, Defendant has failed to return the Estates' property in its possession to the Plaintiff. Accordingly, the Debtors seek a finding that there is a violation of the stay and that Simba should be enjoined from not permitting access to the Debtors' information on the Servers.

## V. COUNT III– TORTIOUS INTERFERENCE WITH CONTRACT

22. The Debtors reincorporate the allegations contained in paragraphs 1 through 21.

23. The Defendants are tortiously interfering with the APA; thus, the Debtors, only seek damages for tortuous interference with the APA. "Under Texas law, the elements of a tortious-interference-with-contract claim are: '(1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of damage; and (4) actual damage or loss occurred'." *Nova Consulting Group, Inc. v. Engineering Consulting Servs., Ltd.*, 290 F. App'x 727, 737 (5th Cir. 2008)(citing *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 864 (5th Cir. 2004)); *see also Lexxus Int'l, Inc. v. Loghry*, 512 F. Supp. 2d 647 (Bankr. N.D. Tex. 2007)(identifying the same elements to a claim for tortious interference with a contract). The first element is satisfied if the contract at issue is entered into evidence, and there is evidence that by signing the contract the parties were making agreements.

*Nova Consulting Group, Inc.* at 738. In order to prove willful-and-intentional-act-of-interference element of this tortious-interference claim, the plaintiff is only required to demonstrate that there was an intent to interfere with the contract. *Id. at 738.* As to the third and fourth elements, the evidence is sufficient if a "reasonable jury" could find that the damage was proximately caused by the defendant and "the reasonably certain amount of damages." *Id.* at 738.

24. The Defendants' conduct in withholding access to the Servers so that Rockwall and the Debtors may remove the information from the Servers, knowing full well that Rockwall will not close prior to removal of that information is interference with the closing on the Sale. The resulting delay in closing is costing the Debtors tens of thousands of dollars in costs to continue to operate the hospitals.

## VI. <u>REQUEST FOR EMERGENCY CONSIDERATION</u>

25. Plaintiffs reincorporate the allegations contained in paragraphs 1 through 24.

26. The Plaintiffs seek emergency consideration because the conduct of the Defendants may cause irreparable damage to the Debtors. Rockwall was the only party to appear at the auction. Additionally, the sale drew objections from certain parties such as the junior lien holders and Official Committee of Unsecured Creditors. Simba did not file an objection to the sale. After much negotiation, an agreement was reached with all of these parties. These continued delays in closing cost the estate money that it does not have, may compromise the return to the Bank of Texas, and in the end cause Rockwall to not want to close. If Rockwall does not close there is no more time to attempt to sell these entities and the hospitals will go into an immediate shut down. An immediate shut down will mean that the hospitals will not be able to accept patients and potentially patients that are presently at the hospital may need to be

transferred out. The Debtors will do all that they can to continue to operate until such time that all patients are discharged, so as to avoid any disruption to the care of the patient.

27. Defendant has failed to seek relief from this Court or any other court to take the Debtors' property. Defendant is interfering with this Court's Final Order authorizing the sale.

WHEREFORE, Plaintiffs request that the court order immediate access to the Servers in possession of Simba to obtain Debtors' information which is held on those Servers and the Debtors only request a judgment for damages for tortious interference with the contract and a finding of violation of the stay. The Plaintiffs further request such other relief to which the Plaintiffs are so entitled.

Respectfully submitted,

COX SMITH MATTHEWS INCORPORATED

Mark E. Andrews
State Bar No. 01253520
1201 Elm Street, Ste. 3300
Dallas, Texas 75270
(214) 698-7800
(214) 698-7899 (fax)

― and ―

By: */s/ Carol E. Jendrzey*
Carol E. Jendrzey
State Bar No. 10617420
Lindsey D. Graham
State Bar No. 24055412
112 East Pecan Street, Ste. 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (fax)

Attorneys for Debtors and
Debtors in Possession


AND

SINGER & LEVICK, P.C.

Michelle E. Shriro
State Bar No. 18310900
16200 Addison Road, Suite 140
Addison, Texas 75001
Telephone: (972) 380-5533
Facsimile: (972) 380-5748
mshriro@singerlevick.com

Attorneys for Rockwall Rehab Hospitals, Ltd.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of February, 2009, a true and correct copy of the forgoing document was served by e-mail or by first class mail as indicated, to the parties listed below.

William L. Medford
2200 Ross Avenue
Suite 5200
Dallas, TX 75201
Email: medfordw@gtlaw.com

David LeBlanc
2301 Marsh Lane
Plano, TX 75093
Email: dleblanc@svholdings.net

Patrick Collins
Farrell Fritz, P.C.
1320 Rexcorp Plaza
Uniondale, NY 11556
Email: pcollins@farrelfritz.com

Ted Berkowitz
Farrell Fritz, P.C.
1320 Rexcorp Plaza
Uniondale, NY 11556
Email: tberkowitz@farrellfritz.com

Kenneth Stohner
Jackson Walker L.L.P.
901 Main Street, Suite 6000
Dallas, TX 75202
Email: kstohner@jw.com

Michael Morgan
Email: mmorgan@hcmpllc.com

Bruce Buchanan
Email: bbuchanan@hcmpllc.com

Patrick Neligan Jr.
Neligan Foley LLP
Republic Center
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Email: pneligan@neliganlaw.com

Morton R. Branzburg, Esq.
Klehr, Harrison, Harvey, Branzburg & Ellers, LLP
260 S. Broad St.
Philadelphia, PA 19102
Email: mbranzbu@klehr.com

**VIA HAND DELIVERY**
Simba Ventures Holdings
c/o David LeBlanc
5736 Northbook Drive
Plano, TX 75093


*/s/ Lindsey D. Graham*
Lindsey D. Graham